## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| NIKKI BROWN, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA; | ) | |
| and MINT OFFICER RYAN GONZALES | ) | |
| AKA MINT OFFICER RYAN GONZALEZ) | | |
| *in his individual capacity* | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT FOR DAMAGES
## UNDER THE FEDERAL TORT CLAIMS ACT

COMES NOW Nikki Brown, by and through her attorneys, Christopher D. Ponce Esq., Juliet L. Stockton Esq., Nelson P. Boyle, Esq., Jonathan D. Stine, Esq., of The Paul Wilkinson Law Firm, LLC, against the United States Government ("the Government") and Mint Officer Ryan Gonzales aka Mint Officer Ryan Gonzalez and alleges as follows based on information and belief:

### INTRODUCTION

1.     On or about November 9, 2022, Plaintiff Nikki Brown was working for a contractor at the Denver Mint when Officer Gonzalez, while on duty as a U.S. Mint Police Officer, physically restrained, sexually penetrated, and sexually assaulted the Plaintiff without her consent.[1] Doing so, Officer Gonzalez violated the Plaintiff's constitutional rights and caused her to suffer injuries,

---

[1] Throughout this Complaint, the term "Sexual Assault" in initial capital letters means and refers to the entire incident up to, including, and immediately after the alleged Sexual Penetration described here and throughout this Complaint. Meanwhile, the term "Sexual Penetration" in initial capital letters means and refers to the alleged sexual penetration described here and throughout this Complaint.

damages, and losses as further described below. The Plaintiff timely and adequately sent notice to the proper agencies of the United States government. And, having failed to reach a compromise of her claims, the Plaintiff now brings this action in which she respectfully petitions this Court for damages against the above-named defendants and she respectfully demands that a jury determine the facts on all issues for which she has a constitutional or statutory right to do so.

### PARTIES, JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2.      The Plaintiff is a competent adult and hereby brings this this action individually.

3.      At all relevant times, Defendant U.S. Mint Officer Ryan Gonzalez was a federal law enforcement officer who was assigned to work as a police officer for the Treasury Department and to physically report to and enforce the laws at the Denver Mint.

4.      At all relevant times, the Government, acted through its agency, the Denver Mint, which is part of the Bureau of U.S. Mint, within the United States Treasury Department.

5.      At all times relevant, the Government, acted through its individual agents including but not limited to the employees listed both known and unknown in paragraphs 53 and 54 of this Complaint, who were acting within the purpose and course and scope of such relationship.

6.      This action is brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens* Action"), against former federal police officer Ryan Gonzalez in his individual capacity, (hereinafter "Defendant Gonzalez") as a civil action arising under the United States Constitution. 28 U.S.C. § 1331.

7.      This action is alternatively brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et. seq.*, against the United States of America, which vests exclusive subject matter jurisdiction of FTCA litigation in the Federal District Court.

8.      Venue is proper in the United States District Court for the District of Colorado, Tenth Circuit, pursuant to 28 U.S.C. §§ 1391(b)(1), 1391 (b)(2), and/or 1391(b)(3), and 28 U.S.C. § 1391(e)(1), because the United States of America ("U.S." or "United States") is a Defendant, and the events, acts, or omissions giving rise to the Plaintiff's claims occurred at the United States of America Denver Mint (hereinafter "Denver Mint").

9.      Further, venue is proper because the Denver Mint is located in Denver, Colorado, which is both in this District and in the Tenth Circuit. *Id.*

10.     Officer Gonzalez was a federal law enforcement officer who worked at the Denver Mint under the authority of the United States Department of the Treasury ("Treasury Department") from 2021 to 2023.

11.     Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the FTCA.

12.     This suit has been timely filed, in that, on November 30, 2023, Plaintiff timely sent a Standard Form 95 "Notice of Intent to File FTCA Civil Action" to the Treasury Department and the U.S. Mint, a bureau of the Treasury Department, located at 1500 Pennsylvania Avenue, NW Washington, D.C. 20220.  See **Exhibit 1** (ECF 1-1) (the *SF-95 Administrative Claim Form with "attachments"*).

13.     Plaintiff also emailed that notice to the Mint's Chief Counsel, John F. Schorn, at John.Schorn@usmint.treas.gov and receipt was acknowledged on behalf of the U.S. Mint at 801 9th Street, NW Washington, DC 20220. See **Exhibit 2** (ECF 1-2) (*Email to John F. Schorn Chief Counsel*), **Exhibit 3** (ECF 1-3) (*Email from John F. Schorn Chief Counsel confirming receipt of the SF-95*).

14.     No offers of settlement were made by the Government before Plaintiff filed this Complaint.

15.     This Court has jurisdiction under 28 U.S.C. § 1331 to hear the claims stated herein under *Bivens* and the FTCA.

## NATURE OF THE ACTION

16.     This is a *Bivens Action* vindicating the Plaintiff's rights under the Fourth Amendment to the United States Constitution*,* Premises Liability, Negligent Entrustment, Negligent Retention, Negligent Hiring, and Negligent Supervision, and personal injury action arising out of the violent Sexual Assault and Sexual Penetration of Plaintiff on or about November 9, 2022, in Denver, Colorado in the Denver Mint, on land owned, controlled, operated, supervised, managed, secured, patrolled, and maintained by the United States, the Treasury Department, Bureau of the U.S. Mint, Denver Mint.

17.     The Plaintiff brings this case against the United States pursuant to 28 USCS § 2675 and 28 U.S.C. § 2671 *et. seq.*, commonly referred to as FTCA.

18.     The Government's liability is predicated specifically on 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries, emotional distress, and resulting damages that for the basis of this Complaint, were proximately caused by the negligence, wrongful acts, and/or omissions of the Government's employees through its agency, the Treasury Department, Bureau of U.S. Mint, Denver Mint.

19.     The Government's employees were acting within the course and scope of their offices or employment, under circumstances where the Government, if it were a private person or entity, would be liable to the Plaintiff in the same manner and to the same extent as a private individual or entity would be under the laws of the State of Colorado.

20.     Under 28 U.S.C. § 2675, the Plaintiff presented her FTCA claims to the appropriate agency of the Government, namely the Bureau of U.S. Mint, within the Treasury Department on December 1, 2023.

21.     On November 30, 2023, the Plaintiff transmitted the SF-95 Claim for Damage Injury, or death to John F. Schorn Chief Counsel United States Mint via email at John.Schorn@usmint.treas.gov. See **Exhibit 2** (ECF 1-2) (*Email to John F. Schorn Chief Counsel).*

22.     On December 1, 2023, John F. Schorn replied acknowledging receipt of the SF-95 form transmitted on behalf of the Plaintiff on November 30, 2023. See **Exhibit 3** (ECF 1-3) *(Email from John F. Schorn Chief Counsel confirming receipt of the SF-95*).

23.     Pursuant to 28 USCS § 2675 the Plaintiff, as demonstrated above "presented the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent via certified or registered mail." 28 USCS § 2675(a).

24.     On December 11, 2023, at 3:43 am the SF-95 claim was delivered to the U.S. Department of the Treasury 1500 Pennsylvania Avenue NW Washington DC 20220. See **Exhibit 4** (ECF 1-4) (*U.S. Certified Mail Receipt 9589071052700110747427*); See **Exhibit 5** (ECF 1-5)(*USPS tracking delivered 9589071052700110747427 December 11, 2023 at 3:43 am*).

25.     On January 22, 2024, at 3:50 am a second copy of the SF-95 was delivered to the U.S. Department of the Treasury at 1500 Pennsylvania Avenue NW Washington DC 20220. See **Exhibit 6** (ECF 1-6) U.S. Certified Mail Receipt 9589071052700725567342. See also **Exhibit 7** (ECF 1-7)(*USPS tracking delivered Front Desk/Reception /Mail Room January 22, 2024, 3:50 am*).

26.     Pursuant to 28 USCS § 2675(a), "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . ." 28 USCS § 2675(a).

27.     Thus, Plaintiff's claims were denied by operation of law on or about June 1, 2024, when the Department of the Treasury failed to respond to the Plaintiff's claim to make a final disposition of the same within six months. 28 USCS § 2675(a).

28.     Thus, Plaintiff having satisfied the requirements of 28 USCS § 2675(a) has instituted the claims of action herein against the Government for money damages for her personal injuries as stated herein. 28 USCS § 2675(a).

29.     At the time of the Sexual Assault, the Plaintiff was working under an independent contract as a registered nurse at the U.S. Mint Health Offices located within the Denver Mint, providing health services in that specific location.

30.     At the time of the Sexual Assault, the Plaintiff was working under the direct supervision and authority of Dr. Gregory D. Smith ("Dr. Smith"), DO, PHD, FACOFP-dist.

31.     Both the Plaintiff and Dr. Smith worked for a company called Annashae aka Healthcare Staffing and Consulting ("Annashae") under a contract that spanned from approximately 2018 through September 30, 2023.

32.     Plaintiff ceased working at the Denver Mint on or about September 30, 2003, when the contract was terminated.

33.     Neither Dr. Smith nor the Plaintiff were employees of the U.S. Mint at the time of Sexual Assault, personal injury, and constitutional violations that are at issue in this case.

34.     Rather, both Dr. Smith and the Plaintiff were under contract employment with Annashae and assigned to work in or at the Denver Mint.

35.     Per Dr. Smith, only medical staff and the U.S. Mint Police, and nobody else, had the keys to the medical offices located within the Denver Mint.

36.     On or about  November 9, 2022, Officer Gonzalez was employed by the Government.

37.     On or about November 9, 2022, Officer Gonzalez was a duly sworn police officer and law enforcement agent assigned to the Treasury Department.

38.     On or about November 9, 2022, Officer Gonzalez was on duty as a sworn federal officer who was assigned to and/or working at the Denver Mint in Denver, Colorado, Zip Code 80204.

39.     At all times relevant to the Sexual Assault Officer Gonzalez was working under color of law pursuant to his sworn office as a U.S. Federal Officer. At all relevant times on or about November 9, 2022, Officer Gonzalez was wearing a federal law enforcement officer uniform, with a clearly visible utility belt, badge, a handgun and/or firearm, and handcuffs.

40.     Up to and before the Sexual Assault and Sexual Penetration, Officer Gonzalez had access to and used surveillance cameras installed in the Denver Mint as a part of his official duties.

41.     At all relevant times on November 9, 2022, Officer Gonzalez used those same surveillance cameras to track the Plaintiff's whereabouts within the Denver Mint.

42.     On November 9, 2022, believing that the Plaintiff was in the Denver Mint's medical offices, or the nurse's section/office of the Denver Mint, Officer Gonzalez walked to where the Plaintiff was located and entered the room she occupied.

43.     On November 9, 2022, while on official duty, Officer Gonzalez forcibly restrained and sexually penetrated Plaintiff against her will and without her consent in the Medical Offices of the Denver Mint.

44.     At that time and place, while Officer Gonzalez was sexually penetrating and assaulting the Plaintiff, Officer Gonzalez was equipped by the Government and charged to act on the

Government's behalf to secure the facility, forcibly apprehend and detain suspects, protect the Government's property, and enforce the law.

45.     In the days leading up to the November 9, 2022, Sexual Assault, Officer Gonzalez, while on duty as a U.S. Mint Police Officer, made repeated unwanted advances and a series of sexual assaults upon the Plaintiff, in the Medical Offices of the Denver Mint.

46.     The Plaintiff had previously used force to push away and even strike Officer Gonzalez on one occasion, when he had backed her up against a wall and made unwanted, nonconsensual sexual advances toward her.

47.     After the Sexual Assault, the Plaintiff pursued an administrative remedy for Officer Gonzalez's sexual assaults and unwanted sexual penetration of her.

48.     She did so by properly reporting the sexual assaults to U.S. Mint Police Inspector James Broz, Eric Faler, U.S. Mint Supervisor Randy Johnson, the Office of the Inspector General, and Dr. Smith.

49.     Before the sexual penetration and sexual assaults of the Plaintiff, including the Sexual Assault, U.S Mint Police Officers, employees, agents, assigns, and leadership were aware that Officer Gonzalez had previously acted inappropriately on several occasions with a female minor who was interning at the Denver Mint ("Officer Gonzalez's Previous Improper Conduct").

50.     Evidently, the Government, including the Treasury Department and the U.S Mint, had actual knowledge of Officer Gonzalez's Previous Improper Conduct because the U.S. Mint paid a settlement of about $100,000 to Officer Gonzalez's minor female victim and also offered to pay her college tuition.

51.     Since the Government or U.S. Mint settled Officer Gonzalez's Previous Improper Conduct with the minor female with payment of about $100,000 and at least the offer to pay her tuition, it

follows that the Government's employees, agents, or assigns including but not limited to those known and unknown individual listed below in paragraphs 53 and 54, had actual knowledge of Officer Gonzalez's Previous Improper Conduct.

52.      After Officer Gonzalez's Previous Improper Conduct, the Government gave Officer Gonzalez a promotion and a pay increase.

53.      Before the Sexual Assault on November 9, 2022, numerous personnel of the Government knew or should have known about Officer Gonzalez's Previous Improper Conduct, including but not limited to: agents/employees of the U.S. Mint Leadership, U.S. Mint Police Inspector Broz, Acting Chief of Environmental Health Safety Eric Faler, U.S. Mint Supervisor Johnson, agents/employees of the Inspector General's Office, U.S. Mint Deputy Director Kristie McNally, Public Affairs Division Chief Jennifer DeBroekert, Chief Counsel John Schorn, Associate Director Chief Information Officer Francis O'Hearn, Acting Associate Director Human Capital Kenyatta Fletcher, Director of Legislative and Intergovernmental Affairs Jennifer Warren, U.S Mint Police Chief Bill R. Bailey, Chief Equity and Inclusion Officer Dennis Fish, Chief of Public Affairs John Chu, Equal Employment Opportunity Officer Ashley Bailey, unknown or former Deputy Chief Counselors, Deputy Chief Information Officer Brian Senior, U.S. Mint Police Deputy Chief Anthony Simpson, U.S. Mint Police Commander John Brawdy, U.S. Mint Police Field Chief Adrian Lesense, Lieutenant James Dubovos, Lieutenant Lujan, Head Chief Detective Teflor, U.S. Mint Police Officer Reid, Officer Elizabeth Moschetti and other unknown and/or former individuals who held the titles of those listed previously in this paragraph.

54.      Before the Sexual Assault, other agents/employees of the Denver Mint also knew or should have known about Officer Gonzalez's Previous Improper Conduct involving that minor female, including but not limited to: Deputy Superintendent Phil Skinner, Field Chief of Police Robert

Telfor, other individuals who previously held the same titles as Skinner and Telfor, and likely other employees or agents of the Denver Mint.

55.    At all relevant times, the Government, acted by and through its agents and employees at the Treasury Department, U.S. Mint, Denver Mint, including but not limited to those listed and described in paragraphs 53 and 54 of this Complaint at the specific location of the Denver Mint, where tortfeasor Officer Gonzalez was employed.

56.    At all relevant times relevant times, the Denver Mint had a physical address of 320 W. Colfax Avenue, Denver Colorado 80204 ("The Property").

57.    At all relevant times, the Government conducted agency business in the City and County of Denver, Colorado.

58.    At all relevant times, the Government owned the Property.

59.    At all relevant times, the Government controlled the Property.

60.    At all relevant times, the Government occupied the Property.

61.    At all relevant times, the Government managed the Property.

62.    In Colorado, a landowner has a non-delegable duty to protect invitees and licensees from unsafe conditions on the premises.

63.    In Colorado, a landowner is deemed to have constructive knowledge of unsafe conditions on its premises and is vicariously liable for injuries resulting therefrom.

64.    Before November 9, 2022, U.S. Mint Police Officers, U.S. Mint Leadership, U.S. Mint Employees, including but not limited to those listed and described in paragraphs 53 and 54 of this Complaint knew or were aware of Officer Gonzalez's Previous Improper Conduct on the Property of the Denver Mint, while Officer Gonzalez was working there as an employee.

65.    When Officer Gonzalez's Previous Improper Conduct occurred, his minor female victim was interning at the Denver Mint and Officer Gonzalez was employed with the U.S Mint Police at the Denver Mint.

66.    When Officer Gonzalez allegedly sexually assaulted the Plaintiff before November 9, 2022, and at the time of the Sexual Assault, the Government knew or should have known its employees, including Officer Gonzalez, had created a dangerous condition on its property.

67.    By allowing Officer Gonzalez to remain employed with the U.S. Mint Police and working at the Denver Mint, the individuals listed and described in paragraphs 53 and 54 of this Complaint created a dangerous and/or allowed that dangerous condition to remain on the Property.

68.    Before November 9, 2022, the Plaintiff was injured while on the Property when Officer Gonzalez sexually assaulted her on those previous occasions listed above.

69.    On November 9, 2022, The Plantiff was injured while on the Property.

70.    At that time and place, the Plaintiff was a registered nurse working under a contract with the Government for her employer Annashae, a civilian, and she was neither an agent of the Government, nor in the military.

71.    At that time and place, Plaintiff was stocking shelves in the medical offices of the Denver Mint.

72.    At all relevant times, Officer Gonzalez was an employee, agent, and/or assign of the Treasury Department, Bureau of the Mint, working in that capacity on the Property of the Denver Mint.

73.    Before the Sexual Assault and the sexual assaults that occurred before November 9, 2022, the Government possessed actual knowledge of Officer Gonzalez prior inappropriate contact with a minor female resulting in a settlement of $100,000 and college tuition paid the minor female.

74.     Per an investigation by Sanin Global Solutions, "[f]ellow U.S. Mint Police Officers were aware that Officer Gonzalez acted inappropriately on several occasions with a female minor who was interning at the U.S. Mint." *See* **Exhibit 8** (ECF 1-8)(*Investigation Sanin Global Solutions*).

75.     The investigative report above further provides, "[t]he U.S. Mint came to a settlement with the intern.  The settlement included college tuition and money which may have been $100,000." *See* **Exhibit 8** (ECF 1-8)(*Investigation Sanin Global Solutions*).

76.     Upon information and belief, at all relevant times, the Government knew about Officer Gonzalez's Previous Improper Conduct and, yet, the Government not only retained Officer Gonzalez but it gave him a promotion and a pay increase.

77.     Per the investigative report by Sanin Global Solutions, "Dr. Smith was told that Officer Gonzalez subsequently received a promotion and a pay increase." *See* **Exhibit 8** (ECF 1-8)(*Investigation Sanin Global Solutions*).

78.     Per the Sanin Global Solutions investigation employees at the U.S. Denver Mint recall, "[a]n Arupa Jesuit High School minor female student was hired as an intern and worked as a Tour Guide.  The intern appeared to be uncomfortable and harassed by Officer Gonzalez' flirting." *See* **Exhibit 8** (ECF 1-8)(*Investigation Sanin Global Solutions*).

79.     Further, per the report, the intern communicated to U.S. Mint employees that Officer Ryan Gonzalez made her feel uncomfortable and she had told him to stop but he would not. *See* **Exhibit 8** (ECF 1-8)(*Investigation Sanin Global Solutions*).

80.     The sexual harassment of the Arupa Jesuit High School minor female was reported to the Public Affairs Division. *See* **Exhibit 8** (ECF 1-8)(*Investigation Sanin Global Solutions*).

81.     At all relevant times, the individuals 53 and 54 of this Complaint, knew that despite Officer Gonzalez's Previous Improper Conduct,  one or more of those same individuals or others working

for the Government had not only retained Officer Gonzalez but gave him a promotion and a pay increase.

82.     At all relevant times, the Government hired Officer Gonzalez for a new position despite having actual knowledge of his dangerous propensity to having inappropriate contact with a minor female, U.S. Mint intern.

83.     At all relevant times, despite having the actual knowledge of Officer Gonzalez's Previous Improper Conduct as described in the previous two paragraphs and elsewhere in this Complaint, the Government  entrusted Officer Gonzalez with the security camera(s) and keys to the Denver Mint's medical offices that  he then used to stock, sexually assault, and non-consensually sexually penetrate the Plaintiff.

84.     Given the actual knowledge of Officer Gonzalez's Previous Improper Conduct as described in the previous three paragraphs and elsewhere in this Complaint, it is evident that the Government did not properly and appropriately supervise Officer Gonzalez after it gave him access to those security cameras and those keys to the Denver Mint's medical offices.

85.     At all relevant times, Officer Gonzalez used his security camera to locate Nikki Brown and his access key to isolate her.

86.     Officer Ryan Gonzalez then forcefully restrained Ms. Brown from behind against her will, pulled down her pants, and vaginally penetrated her with his penis without her consent.

87.     Officer Ryan Gonzalez did so while he was armed and serving on duty, in his U.S. Mint Police Officer uniform, and utilizing the tools provided to him by the Government.

88.     At that time and place, Ms. Brown was so emotionally distressed that she became physically ill and vomited, she became confused, and she unable to properly speak due to the unwanted non-consensual sexual penetration of her by Officer Gonzalez.

89.     At all relevant times, Ms. Brown was and remains a married woman who is past the age of pre-menopause and had a hysterectomy; she requires lubrications for consensual sex in her marriage.

90.     Ms. Brown never consented to the previous sexual assaults, nor to the Sexual Penetration and Sexual Assault on November 9, 2022.

91.     Before the Sexual Assault, Ms. Brown did not know that Officer Gonzalez was approaching her from behind to sexually penetrate her vagina with his penis.

92.     Officer Gonzalez never asked the Plaintiff for, nor obtained her consent to sexual relations before the Sexual Assault.

93.     Officer Gonzalez never asked the Plaintiff for, nor obtained her consent to physically contact her.

94.     Officer Gonzalez's Sexual Penetration and Sexual Assault of the Plaintiff without her consent violated the Plaintiff's entire person and her personhood.

95.     Officer Gonzalez's Sexual Penetration and Sexual Assault of the Plaintiff without her consent violated the Plaintiff's right to personal and physical privacy.

96.     Officer Gonzalez's Sexual Penetration and Sexual Assault of the Plaintiff without her consent violated the Plaintiff's right to personal and physical safety.

97.     Officer Gonzalez's Sexual Penetration and Sexual Assault of the Plaintiff without her consent violated the Plaintiff's right to be free from unreasonable seizure by agents of the Government.

98.     After Officer Gonzalez sexually penetrated and assaulted the Plaintiff, she never later give Officer Gonzalez any indication that his sexual penetration and sexual assaults were consensual.

99.     After the Sexual Assault and Sexual Penetration, the Plaintiff was in shock and her hands were restrained by Officer Gonzalez.

100.    At that time and place, Officer Gonzalez made it clear that he was using the security cameras to stock the Plaintiff—and he had previously told her he was watching her using the Denver Mint's security system over which the Government had given him control.

101.    At that time and place, after the Sexual Assault Ms. Brown went to the restroom in emotional distress to wash herself from the unwanted non-consensual sexual penetration and unwanted sexual contact with Officer Gonzalez.

102.    At that time and place, Officer Gonzalez behavior in restraining Ms. Brown while clothed with the authority of and/or acting as a U.S. Mint Police Officer, and armed with a gun, under the color of law and authority of the  Government was beyond the bounds of decency.

103.    It was atrocious.

104.    It was utterly intolerable behavior that cannot be excused nor condoned in civilized community.

105.    The Sexual Assault, including the Sexual Penetration, caused the Plaintiff to suffer severe emotional trauma to the point of illness, including but not limited to disorientation, gastrointestinal distress, vomiting, nausea, acute shock and disbelief, depression, PTSD, guilt, fear, depression, shame, flashbacks, anxiety, mood swings, difficulty sleeping, nightmares, intrusive thoughts, hyper vigilance, anger, rape trauma syndrome, spells of crying and tearfulness, embarrassment, panic attacks, difficulty concentrating, headaches, and eating disturbances.

106.    Officer Gonzalez' Sexual Assault of the Plaintiff was reckless.

107.    On and before November 9, 2022, the  Government was reckless by and through its agency (the Denver Mint and its employees, agents, and assigns including but not limited to the known or

unknown in paragraphs 53 and 54 of this Complaint), in its disposition of Officer Gonzalez's Previous Improper Conduct.

108.    In addition, the  Government was reckless concerning its employment of Officer Gonzalez due to the actions and/or inactions (described above) of the Government's employees directly above Officer Gonzalez, which were made while those employees were acting in the course and scope of their employment for the  Government.

109.    Despite Officer Gonzalez's Previous Improper Conduct the Government, continued his employment.

110.    Because the Government failed to remove Officer Gonzalez from the premises, despite the Government's actual knowledge that he had previously demonstrated that he presented a dangerous condition on the Property, Officer Gonzalez was on duty at the Denver Mint to sexually assault and sexual penetration the Plaintiff, which caused the Plaintiff severe injuries, economic damages, noneconomic damages, and physical impairment or disfigurement.

111.    At that time of her Sexual Assaults, the Government had a duty to provide a safe environment to the Plaintiff, and all invitees and licensees on the Property.

112.    This duty included employing U.S Mint Police Officers that would not sexually assault or forcefully and non-consensually sexually penetrate invitees or licensees on the property and terminating employees, including Police Officers, who the Government knew were sexual predators who had previously sexually assaulted others at the Denver Mint.

113.    The Government breached those duties when it failed to adequately train its employees, including those who kept Officer Gonzalez employed and even promoted him and gave him a pay raise after Officer Gonzalez's Previous Improper Conduct.

114.    The Government breached those duties when it continued to employ Officer Ryan Gonzalez, up to and through the subject Sexual Assault after Officer Gonzalez's Previous Improper Conduct.

115.    The Government failed to provide a safe environment on the Property for the Plaintiff to work.

116.    At all relevant times before the Sexual Assault, the Government failed to correct, eliminate, or warn of hazardous conditions on the Property, to wit, the presence of Officer Gonzalez—a known predator and perpetrator of inappropriate contact with a female minor.

117.    Instead, the Government armed Officer Gonzalez with restricted access keys and a security camera, which he used to stalk, sexually assault, and thereafter unwanted non-consensual sexual penetration of the Plaintiff.

118.    As a result of this Sexual Assault and nonconsensual, unwanted Sexual Penetration, the Plaintiff has injuries, damages, and losses and she has a right to compensation for her injuries, damages and losses.

119.    The Government bears 100 percent of the blame for the subject Sexual Assault.

### FIRST CLAIM – PREMISES LIABILITY
(Against Defendant, the United States of America)

120.    Under Fed. R. Civ. P. 10(c), the Plaintiff adopts by reference each and every prior and subsequent allegation into this sentence.

121.    The Government was legally responsible for the activities conducted or circumstances that existed on the Property at the time of the sexual assaults and unwanted non-consensual sexual penetration of the Plaintiff by Officer Gonzalez.

122.    The Government was the *landowner* of the Property at the time of the sexual assaults and unwanted non-consensual sexual penetration of Plaintiff under Colo. Rev. Stat. §§ 13-21-115(1)

*et.seq.*, including Colo. Rev. Stat. § 13-21-115(7)(b)("Landowner" means, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of the real property or for the activities conducted or circumstances existing on real property.").

123.    On November 9, 2022, Plaintiff was a licensee on the Property owned, controlled, occupied, managed, or maintained by the Government, as the term *licensee* is defined in Colo. Rev. Stat. 13-21-115(7)(c) (defining a *licensee* as being the person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent).

124.    According to Colo. Rev. Stat. § 13-21-115(4)(b)(I)-(II), a licensee may recover for damages caused ". . . [b]y the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner that the landowner actually knew about; or [b]y the landowner's unreasonable failure to warn of dangers not created by the landowner that are not ordinarily present on property of the type involved and that the landowner actually knew about."

125.    Alternatively, on November 9, 2022, Plaintiff was an *invitee* on the Property owned, controlled, occupied, managed, or maintained by the Government as the term *invitee* is defined in Colo. Rev. Stat. § 13-21-115(7)(a) (defining an *invitee* as being "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.").

126.    According to Colo. Rev. Stat. § 13-21-115(4)(c)(I), "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers the landowner actually knew about or should have known about."

127.    As a landowner, the United States of America owed certain duties to Plaintiff enumerated in Colo. Rev. Stat. § 13-21-115, including a duty to warn of dangers present on the Property.

128.    Additionally, the Government owed Plaintiff a duty to eliminate hazardous conditions on the Property. *Id., Bordeaux v. Aristocrat Techs.*, 2010 Colo. Dist. LEXIS 587.

129.    Additionally, the Government owed the Plaintiff a duty to warn of hazardous conditions on the Property.*Id., Bordeaux v. Aristocrat Techs.*, 2010 Colo. Dist. LEXIS 587.

130.    As described in paragraphs 49-52, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government failed to meet its duties relative to the dangerous/hazardous conditions existing on the Property at the time of the sexual assaults and unwanted non-consensual sexual penetration of the Plaintiff.

131.    Instead, as described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government contributed to or exacerbated the existence of the dangerous/hazardous conditions existing on the Property at the time of the sexual assaults and unwanted non-consensual sexual penetration of the Plaintiff.

132.    As described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government failed to exercise reasonable care to protect and the Plaintiff others against dangers/hazardous conditions of which it actually knew existed on the Property at the time of the incident.

133.    As described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government failed to exercise reasonable care to protect the Plaintiff and others against dangers of which it should have known existed on the Property at the time of the incident.

134.    As described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government actually knew or reasonably should have known of a dangerous/hazardous condition on the Property, to wit, the presence of Officer Gonzalez after Officer Gonzalez's Previous Improper Conduct and unreasonably failed to eliminate that dangerous/hazardous condition before the unwanted non-consensual sexual penetration and sexual assaults of the Plaintiff by Officer Gonzalez.

135.    As a direct, foreseeable, and proximate result of the Government's failures described in the previous paragraphs (Nos.49 to 54, and Nos. 73-84, 100, 109, 117), the Plaintiff sustained severe injuries, damages, and losses, including but not limited to:

    a.    Serious bodily injury.

    b.    Past and future economic expenses, damages, and losses including, but not limited to, loss of use, medical and other health care and rehabilitation expenses related to his injuries, any wage loss and/or past or future loss of earnings, and loss of time in the amount of $2,500,000.00.

    c.    Past and future non-economic expenses, losses, and damages including, but not limited to, pain and suffering, inconvenience, emotional stress, and anxiety in an amount to be determined by the jury.

    d.    Temporary and permanent physical impairment or disfigurement, or both in an amount to be determined by the jury.

136.    Additionally, as a direct, foreseeable, and proximate result of the Government's failures, the Plaintiff has been rendered more vulnerable to subsequent injury and she will seek compensation for that vulnerability at trial in an amount to be determined by the trier of fact.

## SECOND CLAIM – NEGLIGENCE
(Against Defendant, the United States of America)

137.    Under Fed. R. Civ. P. 10(c), the Plaintiff adopts by reference each and every prior and

subsequent allegation into this sentence.

138.    If the Government was not the landowner of the Property under § 13-21-115(7)(b) at the

time of the unwanted non-consensual sexual penetration and sexual assaults of the Plaintiff, then

the Plaintiff asserts this negligence claim against the Government.

139.    The Government owed one, some, or all of the following common law duties to the

Plaintiff:

      a.  To provide a safe environment on the Property;

      b.  To exercise reasonable care in inspecting the Property;

      c.  To exercise reasonable care in maintaining the Property;

      d.  To exercise reasonable care in controlling the Property;

      e.  To correct hazardous conditions on the Property;

      f.  To eliminate hazardous conditions on the Property; and

      g.  To warn of hazardous conditions on the Property.

140.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts

here by reference under Rule 10(c), the Government unreasonably, carelessly, or recklessly

breached the duties it owed to the Plaintiff in one, some, or all of the following respects:

      a.  Failing to provide a safe environment on the Property;

      b.  Failing to exercise reasonable care in inspecting the Property;

      c.  Failing to exercise reasonable care in maintaining the Property;

      d.  Failing to exercise reasonable care in controlling the Property;

      e.  Failing to correct dangerous/hazardous conditions on the Property;

f.   Failing to eliminate dangerous/hazardous conditions on the Property; or

g.   Failing to warn of dangerous/hazardous conditions on the Property.

As a direct, foreseeable, and proximate result of the Government's statutory failures, Plaintiff suffered and will suffer, including but not limited to, the injuries, damages, and losses described elsewhere in this Complaint, including but not limited to paragraphs 135 and 118 above.

### THIRD CLAIM – NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION
(Against Defendant, the United States of America)

141.   Under Fed. R. Civ. P. 10(c), the Plaintiff adopts by reference each and every prior and subsequent allegation into this sentence.

142.   As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), The Government was negligent in its hiring of Office Ryan Gonzalez.

143.   As described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government was negligent in its training of its employees, agents, and assigns including but not limited to those known and unknown listed and described in paragraphs 53 and 54 of this Complaint.

144.   As described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), The Government was also negligent in its training of Office Ryan Gonzalez.

145.   As described in paragraphs 49-54, 73-84, 100, 109, 117, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government was negligent in supervising, Officer Ryan Gonzalez, for the position of responsibility that regularly required interaction with licensees and invitees on the Property.

146.   As described in paragraphs 49-54, 76-81, 92, 93, 95, above, which the Plaintiff adopts here by reference under Rule 10(c), the Government was negligent in its supervision of is employees

and agents listed and described in paragraphs 53 and 54 of this Complaint as to their disposition of the matter between Officer Ryan Gonzalez and his previous minor female victim.

147.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), the Government was also negligent in retaining Officer Ryan Gonzalez for a position of responsibility that regularly required interaction with licensees and invitees on the Property.

148.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), the Government failed to use reasonable care in the hiring, training, supervision, and retention of Officer Gonzalez.

149.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), the Government failed to use reasonable care in the training and supervision of its employees, agents, and assigns including but not limited to those listed and described in paragraphs 53 and 54 of this Complaint.

150.    As a result, Officer Gonzalez sexually assaulted the Plaintiff when he restrained her and forced unwanted non-consensual sexual penetration upon her person, on the Property, due at least in part to actions of the Government acting to hire, retain, and promote Officer Gonzalez, and/or the Government's failure to properly and reasonably supervise Officer Gonzalez, and/or the Government's failure to properly and reasonably train its employees including Officer Gonzalez for a promoted position after his previous inappropriate contact with a minor female, the above occurred and was within the course and scope of the employment of the Govnerment's employees and agents including but not limited to those individuals listed and described in paragraphs 53 and 54 of this Complaint.

151.    As a direct, foreseeable, and proximate result of the Government's negligence in hiring, training, supervising, and/or retaining Officer Gonzalez, the Plaintiff suffered severe injuries, damages, and losses as stated in paragraphs 135 and 118 above.

152.    As a direct, foreseeable, and proximate result of the Government's negligence, due to the individuals employees, agents, and/or assigns known and unknown listed and described in paragraphs 53 and 54 of this Complaint, in hiring, training, promoting, supervising, and/or retaining, Officer Gonzalez, the Plaintiff suffered severe injuries, damages, and losses as stated in paragraphs 135 and 118 above.

153.    As a direct, foreseeable, and proximate result of the Government's negligence in hiring, training, and/or supervising its employees including but not limited to those listed and described in paragraphs 53 and 54 of this Complaint, Plaintiff suffered severe injuries, damages, and losses as stated in paragraphs 118 and 135 above.

## FOURTH CLAIM – NEGLIGENT ENTRUSTMENT
(Against Defendant, the United States of America)

154.    Under Fed. R. Civ. P. 10(c), the Plaintiff adopts by reference each and every prior and subsequent allegation into this sentence.

155.    Both before and on November 9, 2022, the Government had control of all activities at the the U.S. Denver Mint, including the acts and omissions of Officer Ryan Gonzalez and its other U.S. Mint Police Officers and employees such as those listed and described in paragraphs 53 and 54 of this Complaint.

156.    Both before and on November 9, 2022, the Government had control of the use of the Government's property and fixtures at the Denver Mint, including providing Officer Gonzalez with privileged access to the Property, a U.S. Mint police uniform and badge, a gun, access to the security cameras, and keys to the medical offices.

157.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), the Government owned and/or controlled the Denver Mint before and on November 9, 2022, including during Sexual Assault and Sexual Penetration of the Plaintiff and during the previous sexual assaults of the Plaintiff.

158.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), both before and on November 9, 2022, the Government entrusted Officer Gonzalez with the tools necessary to execute his job as a Police Officer at the Denver Mint, including but not limited to his police uniform, his badge, a gun, access to security cameras on the Property, and keys to enter the medical offices on the Property.

159.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), both before and on November 9, 2022, the Government entrusted its employees including but not limited those listed and described in paragraphs 53 and 54 of this Complaint to work at the Treasury Department, Bureau of U.S. Mint, and/or the Denver Mint.

160.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), both before and on November 9, 2022, the Government entrusted Officer Gonzalez with the safety of its licensees, invitees, and/or patrons.

161.    As described in paragraphs 49-54, 73-84, 100, 109, 117 above, which the Plaintiff adopts here by reference under Rule 10(c), both before and on November 9, 2022, the Government entrusted its employees including but not limited the employees, agents, and/or assigns known or unknown listed and described in paragraphs 53 and 54 of this Complaint with the safety of its licensees, invitees, and/or patrons.

162.    As described in paragraphs 49-54, above, which the Plaintiff adopts here by reference under Rule 10(c), both before and on November 9, 2022, the Government knew or reasonably should have known that Officer Gonzalez would likely be involved in an unreasonable risk of physical harm to others.

163.    Because of the facts described in paragraphs 49-54 above, which the Plaintiff adopts here by reference under Rule 10(c), both before and on November 9, 2022, it was unreasonable or reckless for the Government to entrust Officer Gonzalez with his police uniform, his badge, a gun, access to security cameras on the Property, and keys to enter the medical offices on the Property.

164.    Because of the facts described in paragraphs 49-54 above, which the Plaintiff adopts here by reference under Rule 10(c), it was unreasonable or reckless for the Government to entrust those individuals listed and described in paragraphs 53 and 54 of the Complaint as it did both before and on November 9, 2022.

165.    As a direct, foreseeable, and proximate result of the Government's unreasonable or reckless entrustment of Officer Gonzalez, the Plaintiff suffered severe injuries, damages, and losses as set forth in paragraph 135 and 118 above.

166.    As a direct, foreseeable, and proximate result of the Government's unreasonable or reckless entrustment of those individuals in paragraphs 53 and 54 of this Complaint, Plaintiff suffered severe injuries, damages, and losses as set forth in paragraph 135 and 118 above.

**FIFTH CLAIM – VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR***
(Against Defendant, the United States of America)

167.    Under Fed. R. Civ. P. 10(c), the Plaintiff adopts by reference each and every prior and subsequent allegation into this sentence.

168.    On or before November 9, 2022, the individuals listed and described in paragraphs 53 and 54 of this Complaint, were agents, employees, or representatives of the Government.

169.    Upon information and belief, at all times relevant, the individuals listed and described in paragraphs 53 and 54 of this Complaint, were acting within the scope of their agency, employment or representation for the Government in furtherance of its business.

170.    As a matter of law, the Government is vicariously liable for the intentional acts, negligence, carelessness, and/or recklessness of those individuals listed and described in paragraphs 53 and 54 of this Complaint, under the doctrine of *respondeat superior*.

As a direct, foreseeable, and proximate result of the intentional acts, negligence, and/or recklessness of those individuals, the Plaintiff suffered and will suffer, including, but not limited to, the following injuries, damages, and losses as set forth in paragraphs 135 and 118 above.

**SIXTH CLAIM – *BIVENS ACTION* FOR VIOLATION OF 4th AMENDMENT RIGHTS**

(Against Defendant, Mint Officer Ryan Gonzales AKA Mint Officer Ryan Gonzalez)

171.    Under Fed. R. Civ. P. 10(c), the Plaintiff adopts by reference each and every prior and subsequent allegation into this sentence.

172.    On or before November 9, 2022, the individuals listed and described in paragraphs 53 and 54 of this Complaint, were agents, employees, and/or representatives of the Government.

173.    At all relevant times, the individuals listed and described in paragraphs 53 and 54 of this Complaint, were acting within the scope of their agency, employment and/or representation for the Government in furtherance of its business.

174.    On November 9, 2022, Officer Gonzalez was employed by the Government and was a duly sworn police officer and law enforcement agent assigned to the Treasury Department.

175.    On November 9, 2022, Officer Gonzalez was on duty as a sworn federal officer and physically located at the Denver Mint.

176.    On November 9, 2022, Officer Gonzalez was working under color of law pursuant to his sworn office as a United States Federal Officer.

177.    At that time and place, Officer Gonzalez was wearing a federal law enforcement officer uniform, with a clearly visible badge, a belt with a holstered firearm, and handcuffs and had been given access to surveillance/security cameras in the Denver Mint and keys to access the medical office at the Denver Mint.

178.    At all relevant times, Officer Gonzalez was using surveillance cameras installed in the Denver Mint, which he ordinarily used as a part of his official duties, to track the whereabouts of the Plaintiff.

179.    Believing that Plaintiff was in the nurse's section of the Denver Mint, Officer Gonzalez walked to where she was located and went inside the room she occupied.

180.    Officer Gonzalez then forcibly restrained Ms. Brown from behind and sexually penetrated her against her will and without her consent in the Medical Offices of the Denver Mint.

181.    At that time and place, seconds before he sexually penetrated Ms. Brown against her will, Officer Gonzalez was wearing his official uniform, displaying his badge, wearing his utility belt, handgun, and handcuffs.

182.    At that time and place, Officer Gonzalez used the presence of his law enforcement equipment, including his handgun, his training, his authority, and his handcuffs, to subdue Ms. Brown and sexually penetrate her without her consent.

183.    At any moment while Officer Gonzalez was raping Ms. Brown, Officer Gonzalez was capable of and equipped to act to secure the facility, apprehend suspects, protect property of the Government, and to enforce the law.

184.    Throughout the time that Officer Gonzalez was raping Ms. Brown against her will and without her consent, Officer Gonzalez was also acting under color of law as a duly sworn federal law enforcement officer.

185.    Defendant Ryan Gonzalez's act of forcing sexual contact upon Ms. Brown resulted in Ms. Brown being unreasonably seized in violation of her right under the 4th amendment to the United States Constitution.

186.    Thus, under *Bivens*, the Government is responsible for Ms. Brown's injuries, damages, and losses as described in paragraphs 135 and 118 above.

187.    Officer Gonzalez is responsible for Ms. Brown's injuries, damages, and losses suffered by Plaintiff as described in paragraphs 135 and 118 above.

## ADVISORY NOTICE OF INTENT TO PURSUE EXEMPLARY DAMAGES

188.    Ms. Brown places the Defendants and this Court on notice of her intention to move to amend this Complaint to add a request for exemplary damages at the appropriate time consistent with Colo. Rev. Stat. § 13-21-102.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff respectfully prays for judgment against the Defendants on their respective claims in an amount to fairly and reasonably compensate her for injuries, harm, and losses from this incident:

1.    For general damages according to proof:

2.    For special damages according to proof in the amount of $2,500,000.00;

3.    For personal pre-judgement and post-judgment interest as permitted by law;

4.    For costs of litigation incurred by the Plaintiff herein; and

5. For such other and further relief as this Court deems just and proper pursuant to the Federal Torts Claim Act, Federal Law, Constitutional law, and Colorado law.


DATED: June 19, 2024                    **The Paul Wilkinson Law Firm, LLC**

By: s/Christopher D. Ponce
By: s/Juliet L. Stockton
By: s/Jonathan D. Stine
By: s/Nelson P. Boyle
Christopher D. Ponce, Esq., #48268
Juliet Stockton, Esq., #43193
Nelson P. Boyle, Esq., #39525
Jonathan D. Stine, Esq., #38925

E-Mail: chris@pwlfllc.com
          juliet@pwlfllc.com
          Nelson@5280Appeals.com
          jonathan@pwlfllc.com
*Attorneys for Plaintiff*